28733. A. O. BLACKMAR COMPANY *v.* NATIONAL CASH REGISTER COMPANY.

DECIDED MARCH 18, 1941. ADHERED TO ON REHEARING APRIL 3, 1941.

*J. E. Chapman Jr.,* for plaintiff.
*McGee & Elliott,* for defendant.
*Battle & Smith,* for person at interest.

STEPHENS, P. J. On March 17, 1939, A. O. Blackmar Company instituted in the municipal court of Columbus, returnable to Muscogee superior court, a distraint for rent against J. W. Scott and H. W. Brown, doing business as the Metropolitan Café. By an amendment to the distraint affidavit Scott was stricken as a defendant. The distress warrant issued and was levied on certain personalty as the property of the defendant, being certain merchandise and equipment in the café operated by him, including "1 Nat. cash register, No. 3734444—6084-7-5C." Thereafter, on March

18, 1939, the National Cash Register Company filed in the distraint proceedings a claim to the cash register levied on, in which it was deposed that the register was not the property of the defendant Brown, but was the property of the claimant. The claim case came on for trial before the judge of the superior court without the intervention of a jury, and it was stipulated and agreed between counsel for the plaintiff and the claimant that the judge should render judgment on an agreed statement of facts of which only the following are pertinent:

"To sustain its claim, the National Cash Register Company relies upon two certain instruments, copies of which are attached hereto designated, respectively, exhibits A and B. The register was sold by claimant to defendant on a deferred payment plan, and there remains due the sum of eight hundred eighty-five ($885) dollars as the balance of the purchase-price. Both of said instruments, exhibits A and B, were procured upon the solicitation of a representative of the National Cash Register Company, and the company relied on these instruments when it delivered possession of the cash register to Harold W. Brown. At the time of the signing of the instruments Harold W. Brown paid in cash to the representative of the National Cash Register Company the sum of seventy ($70) dollars as part of the purchase-price of the register. At the time the instrument designated exhibit A was signed and witnessed and the affidavit of J. R. Morehead was made, the serial number of the cash register, 3734444, was not inserted, the machine at that time not having been manufactured. Subsequently, on or about November 2, 1938, after the machine had been manufactured, the serial number was, by an agent of the National Cash Register Company, inserted in said instrument in a blank which had been left for that purpose, and in the place where it now appears as shown in the copy of said instrument attached hereto as exhibit A. The said agent had no specific authority from the National Cash Register Company to insert said serial number in said contract, but did so in the course of the regular and usual duties of such employee in the business of said National Cash Register Company as regularly conducted. The style number, 6084 (7 )5C, was inserted in the instrument at the time of its being signed on September 7, 1938. At the same time the serial number was inserted in the instrument designated exhibit A the serial number likewise was in-

serted in a blank left for that purpose in the instrument designated as exhibit B. At the time the instrument, exhibit A, was signed on September 7, 1938, there was also left blank a line underneath the name 'The National Cash Register Company' and also a blank opposite the word 'accepted.' On September 14, 1938, these blanks were filled in with the date now shown thereon opposite the word 'accepted' and M. J. Levy, a duly-authorized representative of the National Cash Register Company, signed his name in the position now shown on exhibit A. After September 14, 1938, the National Cash Register Company manufactured and delivered to Harold W. Brown the cash register in question, delivery having been made on or about November 15, 1938. On that date the instrument designated exhibit B was, by a representative of the National Cash Register Company, dated '11-15-1938.' On November 17, 1938, the instrument exhibit A was filed for record in the office of the clerk of the superior court of Muscogee County, Georgia, and the instrument was recorded in mortgage book 111, page 358. The public record discloses the serial number, 3734444, in the position indicated in exhibit A. Likewise, the public record shows the acceptance by the National Cash Register Company, by M. J. Levy, on September 14, 1938."

The pertinent and material portions of the instrument referred to in the foregoing stipulation of facts as exhibit A are as follows: "City Columbus, County Muscogee, Georgia. The National Cash Register Company, Dayton, Ohio: Date Sept. 7, 1938. Please manufacture and ship freight prepaid to 1026 Broadway, City Same County Same, Georgia or to the nearest railroad station (residence address same), one cash register style 6084 (7) 5C, denomination of keys, special ———, accounting machine style ———, to be used for ——— Numbers 3734444———. Kind of business, Restaurant; finish Black and Chromium; for which undersigned agrees to pay you . . . This order subject to acceptance by the company at Dayton, Ohio. . . You are authorized to insert here the numbers of the chattels assigned to this order and to date the note provided for herein. The chattles shall remain your property until the price, or any judgment for the same, is paid in full. . . Metropolitan Café, by Harold W. Brown. J. R. Morehead, Witness. Accepted, September 14, 1938. The National Cash Register Co. by M. J. Levy. . . In person came J. R.

Morehead who, being duly sworn, deposes and says that he saw Harold W. Brown sign and deliver the within deed for the purpose therein mentioned, and that affiant signed the same as witness thereto. J. R. Morehead. Sworn to and subscribed before me this 7th day of September, 1938, Gales A. Craig, Notary Public, Muscogee Co., Ga. . . State of Georgia, Muscogee County, clerk's office, Superior Court. Left for record this the 17th day of November, 1938, at 8:40 o'clock a. m. Recorded in book 111, page 358, this 17 day of Nov., 1938. N. Allie Jones, Deputy Clerk." The instrument appears in the record as recorded, November 17, 1938, in the office of the clerk of Muscogee superior court. The judge sustained the claim of the National Cash Register Company, and the plaintiff excepted.

The paper executed by the defendant is not a bill of sale. It is merely an offer to purchase the cash register. In *National Cash Register Co.* v. *Lipka,* 46 *Ga. App.* 321, 322 (168 S. E. 599), s. c. 176 *Ga.* 200 (167 S. E. 598), an instrument similar to the one here involved, until its acceptance by the seller, was held "a unilateral and unaccepted offer," the record of which would not constitute legal and constructive notice that the seller therein retained title to the property described. It appears from the agreed facts that this "unaccepted offer" was executed by the buyer on September 7, 1938, before an unofficial witness and accepted by the seller on September 14, 1938. This offer could not have become a conditional bill of sale until it was accepted by the company. The paper was afterwards recorded on November 17, 1938. A conditional bill of sale or retention-title agreement is not entitled to record unless it is executed or attested in the manner prescribed by law. Code, §§ 29-108, 67-105, 67-1301, 67-1302, 67-1401, 67-1402, 67-1403. Such instrument may be probated, by one who witnessed its execution, before an officer authorized to attest deeds, mortgages, etc., and take acknowledgment by affidavit of the witness that he saw the instrument executed. Code, §§ 29-410, 67-105, 67-112. The execution of this "unaccepted offer" by the buyer was probated by the subscribing witness thereto on September 7, 1938, the same day it was executed. However, the acceptance of the instrument by the seller, which, under the terms of the instrument itself and under the law was necessary before it became a completed contract, was not executed until September 14, 1938,

the date it was accepted. It appears from an examination of the instrument itself and from the agreed facts that the acceptance by the seller was not attested or probated so as to be entitled to record under the laws of this State. Therefore the completed contract was not duly attested or probated, and was not entitled to record. The record of a conditional bill of sale or retention-of-title agreement "wtihout due attestation or probate . . shall not be held notice to subsequent bona fide purchasers or holders of younger liens." Code, § 67-111.

It follows that the judge erred in rendering judgment in favor of the claimant.

*Judgment reversed. Sutton and Felton, JJ., concur.*