# STATE v. JULIEN PROVENCHER.[1]

May 21, 1915.

Nos. 19,331—(17).

**Intoxicating liquor — forbidding sale to habitual drunkard.**

1. Where a notice forbidding the sale of intoxicating liquor to an habitual drunkard is served upon a bartender, then on duty in a saloon, and is thereafter seen and examined by the proprietor of the saloon, it is actual notice to such proprietor, from the time that he so examined it.

**Same — sale after notice.**

2. The proprietor is liable for any sale of intoxicating liquor to such habitual drunkard made, either by himself or any of his bartenders, after he received such notice.

**Validity of such notice.**

3. The notice is not invalid for failing to show upon its face that the person signing it is one of the persons authorized by statute to give it, but is invalid, unless the person signing it was in fact one of the persons authorized by statute to give it, and such fact must be established at the trial.

**Surname — idem sonans.**

4. If the names "Boyce" and "Boise" be pronounced as English words, and the letters therein be given the sound ordinarily given to them in the English language, they are *idem sonans*, and the use of one in the notice and of the other in the indictment is not a fatal variance.

**Charge to jury.**

5. There is no reversible error in the rulings or charge of the trial court.

Defendant was indicted by the grand jury of Pennington county of the crime of selling liquor to an habitual drunkard. He was tried before Grindeland, J., who at the close of the state's case denied defendant's motion to dismiss the prosecution, and a jury which returned a verdict of "guilty." From an order denying his motion for a new trial, defendant appealed. Affirmed.

*Stanton & Rowberg,* for appellant.

[1] Reported in 152 N. W. 775.

*Lyndon A. Smith,* Attorney General, *John C. Nethaway,* Assistant Attorney General, and *Hans O. Kjomme,* County Attorney, for respondent.

TAYLOR, C.

Defendant was indicted and convicted for selling intoxicating liquor to one Arthur Boyce, an habitual drunkard, within one year after written notice forbidding him to do so. He made a motion for a new trial, which was denied, and he appealed from the order denying it.

Defendant is the proprietor of the Evelyn Hotel in the city of Thief River Falls and operated a saloon in connection therewith. He held the license and was the proprietor of the saloon, but conducted it through bartenders employed for that purpose, and did not serve liquor to customers himself. On August 21, 1914, R. E. Warner, a police officer of the city, delivered the following written notice to J. H. Malloy, the bartender then on duty in the saloon:

"City of Thief River Falls, Minnesota.
"Mayor's Office.

"To WHOM IT MAY CONCERN: You will please take notice that A. Boise, a resident of the city of Thief River Falls, Minnesota, has used intoxicating liquor to excess for more than a year last past and is now an habitual drunkard, and is not to be allowed in any room where intoxicating liquor is sold in less quantities than five gallons as a beverage; that any sale of intoxicating liquor to the said A. Boise hereafter, will be in violation of chapter 198 of General Laws of Minnesota for the year 1909 and chapter 83 of the General Laws of Minnesota for 1911.

"Dated August 21st, 1914.

"Respectfully,
"R. E. Warner."

In response to a statement by Malloy that he did not know the man named in the notice, Warner replied that the man was Arthur Boyce, a carpenter, and described his appearance. Malloy then placed the notice in a drawer in which such notices were kept, and thereafter it remained in the drawer, together with a considerable number of other

similar notices. On December 24, 1914, Henry Hoffmeister, another bartender, sold a quantity of intoxicating liquor to Arthur Boyce, the man named in the indictment. The giving of the above notice to Malloy and the subsequent sale to Arthur Boyce by Hoffmeister is conceded, but defendant was not present at either transaction, and no notice was ever served upon him personally. He examined the notices in the drawer from time to time, however, and admits that he must have seen the notice in question. The statutes provide:

"It shall be unlawful for any person, except a licensed pharmacist as aforesaid, to sell, give, barter, furnish or dispose of in any manner either directly or indirectly any spirituous, vinous, malt or fermented liquors in any quantity for any purpose whatever, to any spendthrift, habitual drunkard, or improvident person within one year after written notice by any peace officer, parent, guardian, master, employer, relative, or by any person annoyed or injured by the intoxication of such spendthrift, habitual drunkard, or improvident person, forbidding the sale of liquor to any such spendthrift, habitual drunkard, or improvident person." G. S. 1913, § 3148.

"Any sale of liquor in or from any public drinking place by any clerk, barkeeper, or other employee authorized to sell liquor in such place shall be deemed the act of the employer as well as that of the person actually making the sale; and every such employer shall be liable to all the penalties provided by law for such sale, equally with the person actually making the sale." G. S. 1913, § 3191.

Defendant's contention that a notice given to Malloy is not sufficient to render defendant liable for a sale made by Hoffmeister, would perhaps be true if neither defendant nor Hoffmeister knew that the notice had been given. Eilke v. McGrath, 100 Ky. 537, 38 S. W. 877. While it does not appear that Hoffmeister had any knowledge of the notice, defendant, himself, had seen and examined it. The statute requires a written notice but does not direct how it shall be served; and, as the notice in question was delivered to the bartender then in charge of defendant's saloon, and actually reached defendant himself before the sale in controversy, it must be given the same effect as if it had been served upon defendant personally at the time he examined it.

Defendant also contends that the notice is fatally defective, be-, cause it fails to show upon its face that it was signed by a person authorized by statute to give it. It was signed by the police officer who served it, but contains no statement that he was such police officer. To be of any effect the notice must be given by a person having authority to give it; and the prosecution must establish as a fact, independent of any assertion in the notice, that it was given by a person having such authority. The giving of the notice amounts to an assertion that the one signing it had authority to do so, but the fact that it is signed by an authorized person gives it validity, and not the assertion of such fact by the notice. The statute does not require a statement of such fact in the notice, and establishing the existence of the fact by proof at the trial is sufficient. Anderson v. County of Meeker, 46 Minn. 237, 48 N. W. 1022; Schultz v. Brown, 47 Minn. 255, 257, 49 N. W. 982.

Defendant also contends that there is a fatal variance between the notice and the indictment, and that a notice forbidding a sale to "A. Boise" was not admissible in evidence to prove that he had been forbidden to sell to "Arthur Boyce." He insists that "Boyce" and "Boise" are separate and distinct names, that "Boyce" is pronounced in one syllable and "Boise" in two syllables, and that they are not *idem sonans* for that reason. In support of his claim that "Boise" is pronounced in two syllables, he cites the pronunciation of the name of a river and city in the state of Idaho spelled in that manner. The name of this river and city was undoubtedly derived from a foreign language, and the two syllables result from the attempt to pronounce it as pronounced in the language from which it was taken. The courts take judicial notice of the pronunciation ordinarily given to words in the English language, but do not take judicial notice of the pronunciation given to words by a foreign language. State v. Johnson, 26 Minn. 316, 3 N. W. 982; State v. Blakeley, 83 Minn. 432, 86 N. W. 419. There is nothing in the present case to indicate that the name in the notice and the name in the indictment were not both intended as English names. There is a difference in the spelling; but, if the letters be given the sound ordinarily given to them in the English language, and the names be pronounced as English words,

they are clearly *idem sonans*.  There is an entire absence of evidence tending to show that the name "Boise" had ever been applied, in that community, to anyone other than the Arthur Boyce named in the indictment; and we think that the variance is merely a different spelling of the same name, and that both spellings should be given the same pronunciation.  It follows that the notice was properly admitted in evidence and is sufficient.

Defendant also contends that the testimony of the police officers tending to show that Arthur Boyce was the person referred to in the notice should have been excluded, for the reason that the facts so testified to were not brought home to defendant.  The court charged the jury, as a matter of law, that the notice was sufficient.  In view of the admitted facts, we think this instruction was not error, and, as the notice itself sufficiently indicated Boyce as the person intended, evidence tending to prove that he was the person intended was clearly without prejudice.

As the sale by Hoffmeister was made after notice to defendant, the court correctly charged that defendant was liable to the same extent as if he had made the sale himself.  Section 3191, G. S. 1913; State v. Lundgren, 124 Minn. 162, 144 N. W. 752.

The court instructed the jury that "a man is drunk in a legal sense when he is so far under the influence of intoxicating liquor that his passions are visibly excited or his judgment impaired by the liquor;" and further instructed them that before they could convict they must believe beyond a reasonable doubt that Boyce "had been in the habit of getting intoxicated at the time of the alleged sale," and that they must determine from all the evidence "whether he was or was not in such a habit."  Defendant complains that the above does not define what constitutes an habitual drunkard with sufficient clearness.  It might have been amplified, but we think it correct as far as it goes (2 Woollen and Thornton, Law of Intoxicating Liquors, § 742), and sufficient in the absence of a request embodying a correct and more specific and complete definition.  The requests presented by defendant were properly refused, for the reason that they tended to convey an incorrect idea as to the law.

The evidence is sufficient to sustain the verdict and the order appealed from is affirmed.